Yongmoon Kim
ykim@kimlf.com
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILUX CABRERA, CATHERINE GREDER, and JOSHIRA PEREZ, *on behalf of themselves and those similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>OLIPHANT FINANCIAL, LLC; ROBERT A. MORRIS; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No.<br>2:23-cv-22466-ES-SDA<br><br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

### NATURE OF THE CASE

1.    This is a putative class action arising from Defendants' unlawful purchase and enforcement of alleged consumer debts without first obtaining a license to engage in business as a consumer lender or sales finance company, as required by the New Jersey Consumer Finance Licensing Act ("NJCFLA"),[1] at N.J.S.A. 17:11C-3.  As a result of Defendants' unlicensed status, the credit accounts became void and unenforceable as of the date the Defendants allegedly took assignment of them, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

---

[1] N.J.S.A. 17:11C-1 to -49

2.      Plaintiffs and the putative class members are New Jersey consumers against whom Defendants have unlawfully enforced consumer debts after unlawfully taking assignment of them without a sales finance company or consumer lending license.

3.      Thus, Plaintiff brings this action on behalf of themselves and a class of other New Jersey consumers whose consumer debts were purchased and/or enforced by Defendants when the debts are void, seeking relief under the Consumer Fraud Act ("CFA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*, including a declaratory judgment that the credit account contracts are void and unenforceable, that the state court judgments obtained on unlawful debts are void and unenforceable, and an injunction against any further attempts to enforce the credit account contracts in any manner.

4.      Additionally, the Plaintiffs seek monetary damages on behalf of a class of consumers from whom Defendants collected or attempted to collect any money on the void and unenforceable consumer debts, including treble damages under the CFA.

5.      The claims of Plaintiffs and the proposed class are directly related to Defendants' collection efforts.

### JURISDICTION AND VENUE

6.      This Court has jurisdiction to entertain this matter.

7.      Venue in this action is proper in Essex County because Defendants regularly conduct business here, including the collection of void debts from, and the filing of collection actions against, New Jersey residents residing in this County.

### PARTIES

8.      Plaintiff, Marilux Cabrera ("Cabrera"), is a natural person residing in New Jersey.

9.      Plaintiff, Catherine Greder ("Greder"), is a natural person residing in New Jersey.

10.     Plaintiff, Joshira Perez ("Perez"), is a natural person residing in New Jersey.

11.    At all times relevant to this lawsuit, Plaintiffs were a citizen of the State of New Jersey.

12.    Defendant Oliphant Financial, LLC, ("Oliphant") is a debt buyer with its principal place of business at 1800 2nd Street, Suite 603, Sarasota, Florida 34236.

13.    Defendant Robert A. Morris ("Morris") is the Chief Executive Officer of Oliphant.

14.    The Plaintiffs are informed and believes, and on that basis alleges, that Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendants that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendants and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

15.    Some or all of John Does 1-10 set the policies and practices complained of herein.

16.    Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

17.    In this pleading, "Defendants" in the plural refers to all Defendants.

### FACTUAL ALLEGATIONS

**A.    Allegations regarding Defendants' practices generally**

18.    Defendants are in the business of purchasing and taking assignment of defaulted credit accounts originally extended by other creditors, which it then enforces against the

borrowers through collection letters, lawsuits, and post-judgment collection efforts. This is their principal business.

19.     In the course of their business, Defendants have purchased and taken assignment of numerous defaulted accounts originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.

20.     In the course of their business, Defendants have allegedly purchased and taken assignment of numerous defaulted debts originally extended by banks or others to New Jersey consumers which were primarily for personal, household, or family purposes.

21.     When attempting to collect debts, Defendants use the mail, telephone, the internet and other instruments of interstate commerce.

22.     At all times relevant hereto, Morris, as a principal owner, officer, director, shareholder, and/or managing partner of Oliphant, personally implemented, and with knowledge such practices were contrary to law, engaged in, acted consistent with, managed, and oversaw all of the illegal policies and procedures used by himself and other employees of Oliphant complained of herein.

23.     Oliphant is a debt buyer which purchases past-due and defaulted consumer accounts for pennies on the dollar, and then attempts to collect those accounts itself or through other collection agencies or debt collectors.

24.     In connection with Oliphant's efforts to collect consumer debts, Oliphant routinely hires other debt collectors, such as Leopold & Associates, PLLC, to collect the consumer debts.

25.     Defendants have asserted that Plaintiffs incurred or owed a certain financial obligation originating and which arose from one or more transactions which were primarily for the Plaintiffs' personal, family, or household purposes. ("Debt" or "Account").

26.     The Maryland Court of Appeals described the debt buying industry, consisted of players like the Defendants in this case, as follows:

THE DEBT-BUYING INDUSTRY

Traditionally, when a borrower or customer failed to pay a debt on time, the creditor would do what was needed to collect the debt either by engaging with the debtor directly or by employing an attorney or outside debt collector to do so. That still occurs, of course, but a new business model that first developed in the late 1980s has become predominant in the debt collection universe, largely because (1) so much of the debt arrearage in the United States, and in Maryland, is credit card debt, and (2) Federal banking regulations require credit card companies that are bank-related to charge off credit card debt that has been delinquent for six months.

The new model, for those companies, and others, is to sell their delinquent accounts to debt buyers for pennies on the dollar — normally between four and five cents but less for older accounts — and thereby recoup at least something without having to bear the expense of further collection efforts. The sales are in bulk. A three-year study by FTC revealed the sale of more than 5,000 "portfolios" containing nearly 90 million consumer accounts with a face value of $143 billion at a cost of $6.5 billion. *2013 FTC Report* at ii, 8, and Table 2.

While beneficial to the initial creditor in light of the charge-off requirement and lucrative to the debt buyer, the manner in which this new model developed and debt buyers carried on their business created significant consumer protection issues. In its 2013 Report, based in part on a 2009 Study, FTC observed that it received "more consumer complaints about debt collectors, including debt buyers, than about any other single industry." *2013 FTC Report* at i. *See* also *Collecting Consumer Debts - The Challenges of Change, A Workshop Report.* Federal Trade Commission, February 2009 (hereafter *2009 FTC Report*).

In its 2013 Report, FTC noted that, in its 2009 Report, it had expressed concern that debt buyers "may have insufficient or

> inaccurate information when they collect on debts, which may result
> in collectors seeking to recover from the wrong consumer or recover
> the wrong amount." *2013 FTC Report*. The Commission found that,
> although debt buyers normally receive from the initial creditor the
> information needed to be disclosed to the debtor under the Federal
> Debt Collection Practices Act (15 U.S.C. § 1692g) they often do not
> receive data relating to disputes raised by the debtor or a breakdown
> of how much of the debt is for interest, fees, or penalties, and that
> they rarely disclose to the debtor other information, such as data
> indicating that collection may be barred by limitations, that may be
> relevant to whether the alleged debtor is the actual debtor or owes
> the money and, if so, how much. *2013 FTA Report* at iii-iv.

*LVNV Funding LLC v. Finch*, 207 A.3d 202, 206 (Md. 2019).

27.     All or substantially all of the accounts of which Defendants took assignment of extended credit less than $50,000 and provided for rates of interest and/or other charges beyond those authorized by the New Jersey Consumer Finance Licensing Act, at N.J.S.A. 17:11C-1 to -49 for licensed consumer lenders.

28.     In the course of their business, Defendants have enforced its assigned accounts against New Jersey consumers through collection letters, lawsuits, and post-judgment collection efforts.

29.     Significant amounts of these accounts are "retail charge accounts" as defined at N.J.S.A. 17:16C-1(r).

30.     By purchasing and taking assignment of the accounts, Defendants acted as "sales finance compan[ies]" as defined at N.J.S.A. 17:16C-1(f).

31.     By purchasing, taking assignment of, and/or enforcing the accounts, Defendants engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-2.

32.     During all times relevant to this action, Defendants were not licensed as "sales finance company[ies]" or "consumer lender[s]" pursuant to the NJCFLA, at N.J.S.A. 17:11C-3.

33.     The Debt arose from one or more transactions which were primarily for the Plaintiff's personal, family, or household purposes.

34.     The debts alleged to be owed by Plaintiffs and those similarly situated were incurred for personal, family or household purposes.

35.     Defendants contend that the accounts were past-due and in default when they attempted to acquire them.

36.     Defendants are debt collectors.

37.     The Account was allegedly assigned to Defendants for collecting the Debt.

38.     Defendants contend that the accounts were past-due and in default when they were placed with or assigned to Defendants for collection.

**B.     Plaintiff Cabrera**

39.     Sometime prior to the date this action was filed, Defendants allegedly purchased and attempted to take assignment of a LendingClub loan by WebBank that had allegedly been extended to Plaintiff Cabrera ("MC Account" or "MC Debt").

40.     The MC Account was used for personal, family, or household purposes.

41.     Plaintiff Cabrera used the MC Account for personal, family, or household purposes.

42.     Defendants allege Cabrera defaulted on MC Account.

**C.     Plaintiff Greder**

43.     Sometime prior to the date this action was filed, Defendants allegedly purchased and attempted to take assignment of a LendingClub loan by WebBank that had allegedly been extended to Plaintiff Greder ("CG Account" or "CG Debt").

44.     The CG Account was used for personal, family, or household purposes.

45.     Plaintiff Greder used the CG Account for personal, family, or household purposes.

46.     Defendants allege Greder defaulted on the CG Account.

**D.     Plaintiff Perez**

47.     Sometime prior to the date this action was filed, Defendants allegedly purchased and attempted to take assignment of a LendingClub loan by WebBank that had allegedly been extended to Plaintiff Perez ("JP Account" or "JP Debt").

48.     The JP Account was used for personal, family, or household purposes.

49.     Plaintiff Perez used the JP Account for personal, family, or household purposes.

50.     Defendants allege Greder defaulted on the JP Account.

51.     Oliphant allegedly purchased a pool of defaulted consumer accounts, including the MC, CG, and JP Accounts (collectively called the "Accounts" or "Debts") mentioned above.

52.     Oliphant purchased the pool of defaulted consumer accounts, including the Accounts, for pennies on the dollar.

53.     The Accounts were assigned to Leopold & Associates, PLLC to collect the MC and CG Debts.

54.     The Accounts were past-due and in default when it was placed with or assigned to Leopold & Associates, PLLC for collection.

55.     At all times relevant hereto, Leopold & Associates, PLLC acted on behalf of Oliphant in an attempt to collect the Debts.

56.     At all times relevant hereto, the acts and omissions of Leopold & Associates, PLLC were incidental to or taken within the scope of the responsibilities given and authorized by Oliphant.

57.     Upon information and belief, after Defendants purchased the pool of defaulted consumer accounts, Defendants unlawfully assessed interest on the accounts.

58.     In an attempt to collect the accounts, upon information and belief, Defendants reported the account to the three major credit reporting agencies.

59.     Defendants commenced the collection activities against Plaintiffs, including dunning Plaintiffs, when they were not properly licensed to do so under the New Jersey Consumer Finance Licensing Act or any other New Jersey consumer lending statute.

60.     In an attempt to collect the consumer debt allegedly owed by Plaintiffs, Oliphant either directly or indirectly through their agents mailed collection letters and filed collection lawsuits against each Plaintiff.

61.     By failing to inform Plaintiffs that Oliphant was not licensed under the NJCFLA, Defendants frustrated Plaintiff's ability to make an informed decision with respect to their response to Defendants' collection letters and collection lawsuits, and deprived Plaintiffs of their right to enjoy the protections and benefits provided by the NJCFLA, CFA, and the FDCPA.

62.     Had Plaintiff Greder known the CG Debt was void pursuant to the NJCFLA, Plaintiff Greder would not have paid the CG Debt since it was not owed to Defendants.

63.     Defendants commenced the collection activities against Plaintiffs, including dunning Plaintiffs, when the MC Debt and CG Debt were void.

64.     Plaintiffs were deceived and threatened into making payments and/or retaining attorneys because Defendants sued Plaintiffs while hiding material information—that the debts were void pursuant to the NJCFLA—to Plaintiffs and the court.

65.     By purchasing and taking assignment of the accounts, Oliphant engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-2 ("Any person directly or indirectly

engaging . . . in the business of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business").

66.    By purchasing and taking assignment of the accounts, Oliphant acted as a "sales finance company" as defined at N.J.S.A. 17:16C-1(f).

67.    Defendants never informed Plaintiffs and the court that Defendants were not licensed under the NJCFLA at the time Defendants took assignment of the account.

68.    Defendants never informed Plaintiffs and the court that the Debts were void pursuant to the NJCFLA.

69.    Defendants represented to Plaintiffs that they were collecting on a valid debt.

70.    Defendants represented to Plaintiffs that they were the lawful creditor.

71.    Defendants' enforcement of the Accounts were unauthorized and unlawful because Oliphant did not have a license to engage in business as a "sales finance company" or a "consumer lender" pursuant to the NJCFLA, at N.J.S.A. 17:11C-3.

72.    The Debts were void upon assignment to Oliphant, pursuant to N.J.S.A. 17:11C-33(b).

73.    There is no right to cure under the NJCFLA.

74.    As a result of the unlawful collection of the void Debts, Plaintiffs experienced stress, anxiety and embarrassment.

**E.    The Class**

75.    During the period beginning from six years prior to the date when Plaintiffs' Complaint was filed, numerous New Jersey consumers were subject to unlawful collection attempts by Defendants when the debts were void under the New Jersey Consumer Finance

Licensing Act.

76.     During the period beginning from six years prior to the date when Plaintiffs' Complaint was filed, Defendants collected money from numerous New Jersey consumers on accounts assigned to Defendants when the debts were void under the New Jersey Consumer Finance Licensing Act.

77.     During the period beginning from six years prior to the date when Plaintiffs' Complaint was filed, numerous New Jersey consumers made payments to the Defendants on accounts assigned to Defendants when the debts were void under the New Jersey Consumer Finance Licensing Act.

78.     During the period beginning from six-years prior to the date when Plaintiffs' Complaint was filed, Defendants attempted to collect money from Plaintiffs and numerous New Jersey consumers on accounts acquired when Oliphant was not properly licensed.

79.     During the period beginning from six-years prior to the date when Plaintiffs' Complaint was filed, the accounts Oliphant allegedly purchased were void upon assignment to Oliphant, pursuant to N.J.S.A. 17:11C-33(b).

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

81.     Subject to discovery and further investigation which may require Plaintiffs to modify the following class definition at the time Plaintiffs move for class certification, Plaintiffs seek certification of a class and subclasses initially defined as follows:

**Class**: All natural persons with addresses in the State of New Jersey who are listed as the borrower or purchaser in an account assigned to Oliphant Financial, LLC, or any of its sister or parent entities, at any time prior to the date the respective entity became licensed under the NJCFLA, who were subject to collection including but not limited to collection letters, collection calls, collection actions, and credit reporting.

> **Subclass A**: All members of the Class who paid any money or from whom Oliphant Financial, LLC, or any of its sister or parent entities, directly or indirectly through its agents, collected any money on the assigned account.

> **FDCPA Subclass B:** All members of the Class to whom beginning October 14, 2022, through and including the date this case is certified as a class action, Oliphant Financial, LLC, attempted to collect a debt.

82.    Plaintiffs seek to recover declaratory relief on behalf of the class and attorney's fees and costs to the extent allowed by law.

83.    Plaintiffs seek to recover statutory damages, actual damages, restitution and attorney's fees and costs on behalf of themselves and all class members under the claims asserted herein to the extent allowed by law.

84.    The Class and Subclass for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

85.    There are questions of law and fact common to the members of the Class and Subclass that predominate over questions affecting only individuals, including but not limited to:

A.    Whether Defendants are "persons" subject to the requirements of the CFA;

B.    Whether Defendants' assessment of interest and attempted collection of consumer debts from Plaintiffs and those similarly situated constitutes the subsequent performance of the sale of merchandise within the meaning of the CFA at N.J.S.A. 56:8-2;

C.    Whether Defendants' assessment of interest and attempted collection of consumer debts from Plaintiffs and those similarly situated was made in connection with of the sale of merchandise within the

meaning of the CFA at N.J.S.A. 56:8-2;

    D.    Whether Defendants' assessment of interest and attempts to collect consumer debts acquired when it was not properly licensed constitutes an unconscionable commercial practice, deception, fraud, false promise, false pretense and/or misrepresentation in violation of the CFA at N.J.S.A. 56:8-2;

    E.    Whether the judgments entered on cases filed when the Defendants were not properly licensed are void; and

    F.    The amounts that the Class are entitled to recover from Defendants for damages including treble damages under the CFA, disgorgement and restitution.

86.    There are questions of law and fact common to the members of the Subclass that predominate over questions affecting only individuals, including but not limited to:

    G.    The equitable relief that they may be entitled to relating to amounts collected from them on judgments entered on cases filed on accounts acquired by the Defendants when they were not properly licensed under the NJCFLA and pursuant to the CFA at N.J.S.A. 56:8-19;

    H.    Whether Plaintiffs and those similarly situated suffered an ascertainable loss in the form of all amounts alleged owed or paid to Defendants or their agents as a result of Defendants' collection attempts including filing civil collection complaints on void debts under the NJCFLA;

    I.    Whether Plaintiffs and those similarly situated are entitled to treble damages for all ascertainable losses incurred pursuant to the CFA at N.J.S.A. 56:8-19.

87.    There are questions of law and fact common to the members of the Subclass B that predominate over questions affecting only individuals, including but not limited to:

    A.    Whether Defendant is a debt collector under the FDCPA;

    B.    Whether Defendant violated the FDCPA; and

    C.    Whether Plaintiffs, and the Subclass B are entitled to damages.

88.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will

cause an orderly and expeditious administration of the claims of the Class and Subclass and will foster economies of time, effort and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

89.    Plaintiffs' claims are typical of the claims of the members of the Class and the Subclass. They are a member of both the Class and Subclass.

90.    The questions of law and/or fact common to the members of the Class and Subclass predominate over any questions affecting only individual members.

91.    Plaintiffs do not have interests antagonistic to those of the Class and Subclasses.

92.    The Class and Subclasses, of which Plaintiffs are a member, are readily identifiable. The Defendants have records of each account that they acquired when they were not properly licensed under the NJCFLA and the payments made on those accounts from Subclass members.

93.    Plaintiffs will fairly and adequately protect the interests of the Class and Subclass and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

94.    The prosecution of separate actions by individual members of the Class and Subclasses would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability

to protect their interests.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

95.    Plaintiffs do not anticipate any difficulty in the management of this litigation. Plaintiffs' counsel includes counsel who has tried similar claims for a class before a jury.

### FIRST COUNT
### Declaratory Judgment and Injunctive Relief for Plaintiffs and the Class

96.    Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

97.    Section 3 of the NJCFLA, codified at N.J.S.A. 17:11C-3, provides that "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

98.    A violation of section 3 in the making or collection of a loan is a crime in the fourth degree, voids the contracts governing the alleged account(s), and precludes any further right to collect or receive any principal, interest, or charges, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

99.    Thus, the Defendants lacked the legal right to acquire and collect the debts when they did not hold the licensure required by New Jersey Law.

100.    Any judgment arising from an action illegally filed by Defendants is void ab initio or cannot be enforced.

101.    The existence of the judgments are public records that have and will continue to adversely affect the Plaintiffs, the Class, and the Subclasses.

102.    The Defendants violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so.

103.    The Defendants violated section 3 of the NJCFLA by acting as a "sales finance company[ies]" without a license to do so.

104.    Defendants' violations of the NJCFLA constitute unconscionable commercial practices and otherwise violate the NJCFA at N.J.S.A. 56:8-2.

105.    Plaintiffs suffered ascertainable loss from Defendants' CFA violations.

106.    Plaintiffs therefore have standing to seek injunctive and other equitable relief under the CFA, at N.J.S.A. 56:8-19.

107.    Moreover, under the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, the Plaintiffs and the putative Class members are "person[s] interested under a… written contract" and "person[s]… whose rights, status or other legal relations are affected by a statute" and therefore, they "may have determined any question of construction or validity arising under the… contract… and obtain a declaration of rights, status or other legal relations thereunder."

108.    Plaintiffs, the Class, and the Subclasses are entitled to a declaratory judgment that the accounts Defendants unlawfully took assignment of are void.

109.    Plaintiffs, the Class, and the Subclasses are entitled to a declaratory judgment that any judgments obtained by the Defendant against them are void or unenforceable.

110.    The Defendants and their agents or others acting on their behalf should be enjoined from taking any further action or failing to take actions that result in any effort to enforce the accounts and judgments to be declared void or unenforceable.

**WHEREFORE**, as to Count One, Plaintiffs, on behalf of themselves and the Class, hereby requests a Judgment against Defendants,

a.    Granting class certification for class-wide equitable relief under R. 4:32-1(b)(2), and issuing a declaratory judgment applicable to the Plaintiffs and putative Class, pursuant to the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, ruling that:

1.    The Defendants violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so;

2. Alternatively, or additionally, the Defendants violated section 3 of the NJCFLA by engaging business as a "sales finance company" without a license to do so;

3. The Plaintiffs' and putative class members' accounts of which Defendants allegedly took assignment and/or enforced are void by operation of N.J.S.A. 17:11C-33(b);

4. That the void accounts cannot be revived through reassignment;

5. That the judgments obtained by Defendants in actions based on an account allegedly acquired by Defendants when it was not properly licensed are void or unenforceable;

6. At all relevant times hereto Defendants did not have the legal capacity to collect or receive any principal, interest or charges under the void accounts, through any collection mechanism;

7. Defendants lack the capacity to seek enforcement of any of the Plaintiffs' or putative class members' accounts or any judgments obtained on such accounts or to enforce any judgments obtained;

b. Granting a permanent injunction against the Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, prohibiting them from making any further attempts to enforce New Jersey consumers' accounts, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection actions on the accounts;

c. Directing the Defendants to provide equitable notice relief pursuant to the CFA, providing for notice to Class members of the declaratory and injunctive ruling.

d. Awarding Plaintiffs' counsel reasonable attorneys' fees and costs under the CFA;

e. For such other and further relief as the Court deems equitable and just.

### SECOND COUNT
### New Jersey Consumer Finance License Act for Plaintiffs and the Class

111.    Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

112.    Section 3 of the NJCFLA, codified at N.J.S.A. 17:11C-3, provides that "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

113.    A violation of section 3 in the making or collection of a loan voids the loan and precludes any further right to collect or receive any principal, interest or charges, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

114.    Thus, the Defendants lacked the legal right to acquire and collect the debts when it did not hold a license required by New Jersey Law.

115.    Any judgment arising from an action illegally filed by Defendants is void ab initio and cannot be enforced.

116.    The existence of the judgments are public records that have and will continue to adversely affect the Class.

117.    The Defendants violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so.

118.    The Defendants violated section 3 of the NJCFLA by acting as "sales finance company[ies]" without a license to do so.

**WHEREFORE**, as to Count Two, Plaintiffs, on behalf of themselves, the Class, and Subclass A, hereby request a Judgment against Defendants, jointly and severally,

a.    Granting class certification of the Class and Subclass A;

b.    Awarding, to the Subclass A, "three times any amount of the interest, costs or other charges collected in excess of that authorized by law" under the NJCFLA, at N.J.S.A. 17:11C-33(b);

c.    Granting a permanent injunction in favor of the Class and against the Defendants prohibiting them from making any further attempts to enforce New Jersey consumers' accounts, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection actions on the accounts;

d.    Directing the Defendants to provide equitable notice relief, providing for notice to Class members of the declaratory and injunctive ruling;

e.    Awarding Plaintiffs' counsel reasonable attorneys' fees and costs;

f.   For pre-judgment and post-judgment interest; and

g.   For such other and further relief as the Court deems equitable and just.

### THIRD COUNT
### Consumer Fraud Act for Plaintiffs, the Class, and Subclass A

119.   Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

120.   Section 3 of the NJCFLA, codified at N.J.S.A. 17:11C-3, provides that "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

121.   A violation of section 3 in the making or collection of a loan voids the loan and precludes any further right to collect or receive any principal, interest, or charges, pursuant to the NJCFLA, at N.J.S.A. 17:11C-33(b).

122.   Thus, the Defendants lacked the legal right to acquire and collect the debts when they did not hold a license required by New Jersey Law.

123.   Any judgment arising from an action illegally filed by Defendants is void ab initio or cannot be enforced.

124.   The existence of the judgments are public records that have and will continue to adversely affect the Class.

125.   The Defendants violated section 3 of the NJCFLA by engaging in the "consumer loan business" in New Jersey without a license to do so.

126.   The Defendants violated section 3 of the NJCFLA by acting as "sales finance company[ies]" without a license to do so.

127.   Defendants' violations of the NJCFLA constitute unconscionable commercial practices and otherwise violate the Consumer Fraud Act (CFA) at N.J.S.A. 56:8-2.

128.    Plaintiffs and the Class members suffered ascertainable loss(es) from Defendants' CFA violations and enforcement or attempted enforcement of void debts.

129.    The Subclass A members suffered ascertainable loss(es) in the amount of monies paid on the void accounts.

130.    Defendants are "persons" within the meaning of the CFA at N.J.S.A. 56:8-1.

131.    Plaintiffs and those similarly situated purchased "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

132.    Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

133.    Defendants engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

134.    Defendants committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2 by:

    a.    Misrepresenting in its dunning letters that it had the legal right to collect on the accounts when the debts were void;

    b.    Filing civil collection complaints on void debts;

    c.    Representing, explicitly or impliedly, in the collection complaints and related communications with Plaintiffs and those similarly situated that Defendant had the right to collect and file the actions such that the collection complaints could be properly filed and maintained even though the debts were void; and

    d.    Demanding and/or accepting payments, including using bank levies and wage garnishments on the void accounts and the judgments obtained from actions filed when the debts were void;

135.    As a result of Defendants' unlawful actions and violations of the CFA, Plaintiffs,

the Class members, and the Subclass A members suffered ascertainable loss(es), from

Defendants' CFA violations in the amount monies collected, and/or paid on the void accounts,

entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

**WHEREFORE**, as to Count Three, Plaintiffs, on behalf of themselves and the putative

class members, hereby request a Judgment against Defendants, jointly and severally,

a.    Granting class certification of the Class under R. 4:32-1(b)(3);

b.    Awarding treble damages to Plaintiffs and the Class under the CFA, at N.J.S.A. 56:8-19;

c.    Awarding a refund of all moneys collected to Plaintiffs and the Subclass A members under the CFA, at N.J.S.A. 56:8-2.11;

d.    Granting a permanent injunction against the Defendants, pursuant to the CFA, at N.J.S.A. 56:8-19, prohibiting them from making any further attempts to enforce New Jersey consumers' accounts, including an injunction against any attempt to collect upon, enforce or assign the account contracts, or to seek collection remedies on or assign any outstanding judgments entered in collection actions on the accounts;

e.    Directing the Defendants to provide equitable notice relief pursuant to the CFA, providing for notice to Class members of the declaratory and injunctive ruling;

f.    Awarding Plaintiffs' counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

g.    For pre-judgment and post-judgment interest; and

h.    For such other and further relief as the Court deems equitable and just.

### FOURTH COUNT
### Fraud for Plaintiffs, Class, and the Subclass A

96.    Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

97.    By taking possession of the Class members' alleged accounts and attempting

collection of the same, Defendants made material misrepresentations that they had the legal right

to possess and collect the alleged debts when they did not.

98.     By taking possession of the Class members' alleged accounts and attempting collection of the same, Defendants made material misrepresentations to the Class members that the debts were valid when the debts were void.

99.     By taking possession of the Class members' alleged accounts and attempting collection of the same, Defendants made material misrepresentations to the Class members that they were the lawful creditor when they were not.

100.    At the time Oliphant took possession of the Class members' alleged accounts, Defendants knew or should have known that the debts were void.

101.    In attempting to enforce and/or collect the Class members' alleged debts, Defendants intended that the Class members rely on their material misrepresentations that Defendants had the legal right to possess and collect on the Class members' alleged accounts.

102.    The Class members reasonably relied on Defendants' material misrepresentations that they were legally allowed to attempt enforcement of the Class members' alleged debts.

103.    The Class members have been damaged as a result of their reasonable reliance on Defendant's misrepresentations that they had the legal right to attempt collection of the Class members' alleged debts when they did not.

**WHEREFORE**, as to Count Four, Plaintiffs, on behalf of themselves, the Class members, and the Subclass A members, hereby requests a Judgment against Defendants,

a. Granting class certification of the class under R. 4:32-1(b)(3);

b. A money judgment for compensatory damages based on Defendants' material misrepresentations and the Subclass A members' resulting reliance and damages;

c. A money judgment for punitive damages based on Defendants' material misrepresentations and the Subclass A members' resulting reliance and damages;

d. For attorney's fees, litigation expenses and costs in connection with this action;

e. For pre-judgment and post-judgment interest; and

f.    For such other and further relief as the Court deems equitable and just.

**FIFTH COUNT**
**Fraudulent Inducement for Plaintiffs, the Class, and the Subclass A**

104.    Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

105.    By taking possession of the Class members' alleged account(s) and attempting collection of the same, Defendants made a material misrepresentation of a presently existing fact to the Subclass A members that they had the legal right to possess and collect the void debts when they did not.

106.    At the time Oliphant took possession of the Class members' alleged accounts, Defendants knew that they were not legally licensed to possess or attempt to collect the Class members' alleged debts since the debts were void.

107.    In attempting to enforce and/or collect the Class members' alleged debts, Defendants intended that the Class members rely on their material misrepresentations that Defendants had the legal right to collect the void accounts.

108.    The Class members reasonably relied on Defendants' material misrepresentations that they were legally allowed to attempt enforcement of the Class members' alleged debts to their detriment.

**WHEREFORE**, as to Count Five, Plaintiffs, on behalf of themselves, the Class members, and the Subclass A members, hereby request a Judgment against Defendants,

a.    Granting class certification of the Subclass A;

b.    A money judgment for compensatory damages based on Defendants' false misrepresentations and the Subclass A members' resulting reliance and damages;

c.    A money judgment for punitive damages based on Defendants' false misrepresentations and the Subclass A members' resulting reliance and damages;

d.    For attorney's fees, litigation expenses and costs in connection with this action;

e.   For pre-judgment and post-judgment interest; and

f.   For such other and further relief as the Court deems equitable and just.

**SIXTH COUNT**
**Unjust Enrichment**
**Disgorgement on Behalf of Plaintiffs and the Subclass A**

109.   Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

110.   The Defendants have been unjustly enriched by the funds that they have received from the Subclass A members.

111.   The Subclass A members reasonably expected remuneration from the payments to Defendant through Defendant's subsequent reporting to credit reporting agencies that the alleged debts had been paid in full or that the alleged outstanding balance had decreased.

112.   The Subclass A members paid money to Defendants under a mistake of fact since the debts were void under the NJCFLA.

113.   The funds collected by Defendants have conferred a benefit on the Defendants.

114.   Defendants know that that they received a benefit by receiving funds from the Subclass A members.

115.   Defendants' retention of the benefits conferred on them by the Subclass A based on illegally obtained accounts and judgments would be unjust.

116.   Defendants should be ordered to disgorge or provide restitution to the Subclass A.

117.   The disgorgement or restitution should include any profits or other benefits enjoyed by the Defendants as a result of the receipt of the Subclass A's funds.

**WHEREFORE**, as to Count Six, Plaintiffs, on behalf of themselves and the putative Subclass members, hereby requests a Judgment against Defendants,

a.   Granting class certification of the Subclass;

b.  A money judgment for restitution or disgorgement of all amounts collected by the Defendants from the Subclass A including any profits or other benefit enjoyed by Defendants as a result of receiving and using the funds from them;

c.  For attorney's fees, litigation expenses and costs in connection with this action;

d.  For pre-judgment and post-judgment interest; and

e.  For such other and further relief as the Court deems equitable and just

### SEVENTH COUNT
### Violations of the FDCPA for Plaintiff and Subclass B

136.  Plaintiffs reassert and incorporate herein the allegations contained in the preceding and following paragraphs.

137.  Plaintiffs and the Subclass B members are a "consumer[s]" as defined by 15 U.S.C. § 1692a(3).

138.  The Debt is a consumer "debt" as defined by 15 U.S.C. § 1692a(5).

139.  Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and the interpretations thereof.

140.  Defendants' collection letters are "communications" as defined by 15 U.S.C. § 1692a(2).

141.  At all times relevant hereto, collection law firms acted on behalf of Defendants in an attempt to collect the debt.

142.  At all times relevant hereto, Defendants actively participated in the collection of consumer debts allegedly owed by Plaintiffs and other New Jersey consumers.

143.  Therefore, not only are Defendants liable for the acts and omissions of its agents, but for its own acts in hiring, directing, and negligently supervising their agents to collect debts for Defendants.

144. By attempting to collect consumer debts without a license to do so under the NJCFLA, by attempting to collect consumer debts on behalf of debt buyers not properly licensed under the NJCFLA, to whom the debt is allegedly owed, Defendants violated the FDCPA (including, but not limited to, 15 U.S.C. §§ 1692e (including subsections 1692e(2), 1692e(5), and 1692e(10)), 1692f (including subsection 1692f(1)), and 1692g (including subsections 1692g(a)(1) and 1692g(a)(2))).

145. The violations of the FDCPA described herein constitute *per se* violations.

146. Based on any one or more of those violations, Defendants are liable to Plaintiffs for damages, attorneys' fees and costs under 15 U.S.C. § 1692k.

**WHEREFORE**, as to Count Seven, Plaintiffs, on behalf of themselves and the putative Subclass B members, hereby requests a Judgment against Defendants,

    a. For certification of this instant matter as a class action, appointing the named Plaintiffs as representative of the Subclass B, and appointing the attorneys of Kim Law Firm LLC as class counsel;

    b. For statutory damages in favor of Plaintiffs pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) or, in the alternative, 15 U.S.C. § 1692k(a)(2)(A);

    c. For statutory damages in favor of the Subclass B pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

    d. For actual damages in favor of Plaintiffs and the Subclass B pursuant to 15 U.S.C. § 1692k(a)(1), including the tax consequences of this action;

    e. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1692k(a)(3);

    f. For pre-judgment and post-judgment interest; and

    g. For such other and further relief as the Court deems equitable and just.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues subject to trial by jury.

### CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding, except the cases styled:

- *Olpihant Financial, LLC v. Cabrera*, BER-DC-4970-23;

- *Cabrera v. Leopold & Associates, LLC, et al.* 2:24-cv-01707-JKS-JSA (formerly ESX-L-793-24);

- *Oliphant Financial, LLC v. Catherine Greder,* MER-DC-1435-22; and

- *Oliphant Financial, LLC v. Joshira Perez*, ESX-DC-25812-24.

Additionally, Plaintiff Greder will be filing a complaint against the collection agency, Leopold & Associates, PLLC, in Essex County and Plaintiff Perez will be filing a complaint against the collection agency, The Tsarouhis Law Group, LLC, in Essex County.

Dated: August 1, 2025

KIM LAW FIRM LLC

*/s/ Yongmoon Kim*
Yongmoon Kim

*Attorneys for Plaintiffs*